IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

NATHAN TOTTEN & LINDSEY TOTTEN,
individually and as guardians and next friend of
T.T., an infant,

                    Plaintiffs,

v.                                                   CIVIL ACTION NO.  3:21-0306

DR AARON SCAIFE,
(personally and individually), and
ST. MARY'S MEDICAL CENTER, INC.,
a West Virginia Corporation,

                      Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the United States' Motion to Substitute (ECF No. 3) and Motion to Dismiss (ECF No. 6), Defendant St. Mary Medical Center's ("SMMC") Motion to Dismiss (ECF No. 8), Plaintiffs' Motion to Amend Complaint (ECF No. 20) and Plaintiffs' Request for Remand (ECF No. 24). For the reasons herein, the Motions to Substitute (ECF No. 3) and to Dismiss (ECF Nos. 6 and 8) are **GRANTED.** Plaintiffs' Motion to Amend (ECF No. 20) and Request for Remand (ECF No. 24) are therefore **DENIED AS MOOT**.

**I. FACTUAL BACKGROUND**

This action arises from the delivery of infant T.T. at SMMC by Dr. Aaron Scaife. Plaintiffs Nathan Totten and Lindsey Totten are a married couple. Compl. at Parties, ¶ 1, ECF No. 6-1[1]. On March 27, 2019, Plaintiff Lindsey Totten went into labor with her first child, T.T.

---

[1] The Complaint style uses repeating paragraph numbers under each subsection. For

*Id.* at Statement of Facts, ¶ 1. On the same day, shortly after being admitted to SMMC, Plaintiffs were informed that their primary OB-GYN doctor was not available to deliver their baby. *Id.* ¶ 2. Instead, Dr. Scaife, another OB-GYN employed by Valley Health, was the attending physician on call at SMMC. *Id.* ¶ 3. Allegedly, he performed his duties in a manner that was foul and reckless and extreme and outrageous, which caused Plaintiffs severe pain and suffering and emotional harm. *Id.* ¶¶ 4-7.

Dr. Scaife performed (some of) the delivery, during which he allegedly: used foul language from the time he entered the birthing room; used his bare hands to give Plaintiff Lindsey Totten a complete episiotomy with no warning; verbally abused Plaintiff Lindsey Totten when she screamed in pain during said unexpected episiotomy; took off his bloody gloves and threw them on the floor; informed Plaintiff Lindsey Totten that he was abandoning the birth without providing a substitute; actually abandoned the delivery, causing Plaintiffs and the attending nurses to be frantic; and refused to return to complete the delivery upon request by Plaintiff Nathan Totten, instead insinuating that he would physically fight Mr. Totten rather than return to the birthing room. *Id.* at Count I, ¶¶ 1-10. Allegedly, SMMC was aware of Dr. Scaife's history of rude, unprofessional, outrageous, and extreme behavior towards expectant mothers prior to the alleged events but failed to take any action to protect Plaintiffs. *Id.* at Count 2, ¶¶ 3-4. Plaintiffs sued Dr. Scaife and SMMC in the Circuit Court of Cabell County for these events on March 23, 2021. Exhibit 1, ECF No. 1-1.

On May 18, 2021, the United States removed the action to this Court. Notice of Removal, ECF No. 1. In its notice of removal, the United States attached an affidavit confirming that

---

clarity, this Court will therefore refer to the subsections under which the paragraphs can be found. Further, because Plaintiffs served Defendant Scaife with only a partial Complaint, the Court will use the full Complaint docketed at ECF No. 6-1, rather than the one attached to the original notice of removal.

Valley Health Systems has been deemed a Public Health Service Employee under 42 U.S.C. § 233(g) and is subject to Federal Tort Claims Act ("FTCA"). *See* Declaration of Meredith Torres, ECF No. 1-2. Dr. Scaife is employed by the deemed entity Valley Health and thus also subject to the protections of the FTCA. 42 U.S.C. § 233(g)(1)(A).

The United States then moved to substitute itself for Dr. Scaife. Mot. to Substitute, ECF No. 3. It also moved to dismiss the complaint for failure to exhaust administrative remedies pursuant to the FTCA. ECF No. 6. SMMC likewise moved to dismiss the complaint against it for failure to comply with the jurisdictional pre-suit requirements of the West Virginia Medical Professional Liability Act ("MPLA"). ECF No. 8. Plaintiffs then filed a Motion to Amend. ECF No. 20. In response to the United States' Motion to Dismiss, Plaintiffs also requested that the case be remanded to the Circuit Court of Cabell County. ECF No. 24. Parties subsequently briefed the motions, and they are ripe for resolution. Because the issues and the legal framework presented by the various motions overlap significantly, the Court will address the motions together.

## II. LEGAL STANDARD

The federal government is immune from suit unless it consents to be sued. *See e.g., United States v. Sherwood,* 312 U.S. 584 (1941). The FTCA constitutes a limited waiver of that sovereign immunity and allows certain suits to proceed against the federal government. *See* 28 U.S.C. § 1346. The FTCA is the exclusive remedy for specified actions against members of the Public Health Service ("PHS"). *See* 42 U.S.C. § 233(a); *Carlson v. Green*, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C.§ 223(a) that the FTCA is a plaintiff's sole remedy against PHS employees). It protects commissioned officers or employees of the PHS from liability for "personal injury, including death, resulting from the performance of medical,

surgical, dental, or related functions" by requiring that such lawsuits be brought against the United States instead. 42 U.S.C. § 233(a). It functions as a grant of "absolute immunity for actions arising out of the performance of medical or related functions within the *scope of their employment* by barring all actions against them for such conduct." *Hui v. Castenada,* 559 U.S. 799, 806 (2010) (emphasis added).

If a plaintiff attempts to bring a claim under the FTCA, they must comply with certain procedural requirements. For example, when a plaintiff sues a federal employee, the Attorney General (or her designee) may certify that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). Upon certification, the court substitutes the United States as the sole defendant. *See id; see also Maron v. United States*, 126 F.3d 317, 321-22 (4th Cir. 1997). ("Once this certification has been made, the United States is substituted as the sole defendant…. [t]he plaintiff, despite the seeming unfairness, cannot proceed against the individual defendants."). If the plaintiff initiated the action in state court, it "shall be removed without bond at any time before trial" upon such certification. 28 U.S.C. § 2679(d)(2). "This certification of the Attorney General shall *conclusively establish scope of office or employment* for purposes of removal." *Id.* (emphasis added); *Osborn v. Haley*, 549 U.S. 225, 231-32 (2007).

However, a district court is not precluded "from resubstituting the federal official as defendant for purposes of trial if the court determines, postremoval, that the Attorney General's scope of employment certification was incorrect." *Id*. at 242. A plaintiff's challenge to the Attorney General's scope of employment certification is subject to review by the district court. *Id.* at 231. The Fourth Circuit has explained the process by which a district court should review scope of employment certifications:

> In short, the scope-of-employment certification is prima facie evidence that the defendant federal employee acted within the scope of his employment, thereby placing the burden on the plaintiff to prove otherwise. If the plaintiff does not come forward with any evidence, the certification is conclusive. Moreover, the plaintiff's submission must be specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation. If the plaintiff's evidence is sufficient to carry the burden of proof, the defendant federal employee or the Government may come forward with evidence in support of the certification. At this point, the district court may permit (and limit) any needed discovery. Thereafter, the district court must determine whether there are any genuine issues of fact material to the scope-of-employment decision, and, if so, it may conduct an evidentiary hearing to resolve these factual issues. Once any factual issues are resolved, the district court should weigh the evidence on each side to determine whether the certification should stand.

*Gutierrez de Martinez v. DEA,* 111 F.3d 1148, 1155 (4th Cir. 1997). However, the United States "must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact,* and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." (emphasis in original). *Osborn* 549 U.S. at 231.

Thus, in an alleged medical malpractice case involving a federal employee, if the Court determines that the employee acted within the scope of his employment, the challenge to certification fails, and the FTCA is the plaintiff's only remedy. The FTCA has other mandatory pre-suit procedures. "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States,* 508 U.S. 106, 113 (1993). "[T]he requirement of the filing [of an administrative claim] is 'jurisdictional and may not be waived.'" *Plyler v. United States,* 900 F.2d 41, 42 (4th Cir. 1990) (quoting *Henderson v. United States,* 785 F.2d 121, 123 (4th Cir. 1986)). Here, Plaintiffs have not complied with the FTCA. The only remaining issue is whether Dr. Scaife acted within the scope of his employment, which would both challenge the certification for substitution purposes and bring their claims outside of the FTCA.

III. ANALYSIS

A. Motion to Substitute

The United States moved to substitute itself as the named defendant in place of Dr. Aaron Scaife. Mot. to Substitute, ECF No. 3. Plaintiffs did not object to this certification, but they argue that Dr. Scaife was not acting within the scope of his employment in response to the Motions to Dismiss. *See e.g.*, Pls.' Mem. in Supp., ECF No. 25. While Plaintiffs may dispute the scope of employment certification, for removal purposes, the certification is conclusive, and thus the United States' Motion to Substitute (ECF No. 3) is **GRANTED.**

B. United States' Motion to Dismiss

The United States also moved to dismiss on the basis that Plaintiffs had failed to comply with the administrative exhaustion requirements of the FTCA. *See, e.g.*, Mem. in Support of United States' Motion to Dismiss Complaint, ECF No. 7. Plaintiffs conceded that they did not file an administrative claim, but they argue that they were not required to do so because their claims were outside the FTCA. *See* Pls.' Mem. in Supp. at 3-4, ECF No. 25 .[2]

In arguing that Dr. Scaife acted outside the scope of his employment, Plaintiffs challenged both the Attorney General's certification and whether this action is subject to the FTCA's administrative exhaustion requirement. The Court must consider whether Plaintiffs have produced sufficient evidence to conclude that Dr. Scaife acted outside the scope of his employment. *See Gutierrez de Martinez,* 111 F.3d at 1155. This "scope of employment" analysis

---

[2] In doing so, Plaintiffs argue that Dr. Scaife's actions are subject to the FTCA's intentional tort exception. *See* Mem. in Supp. at 3-4. However, they also argue that Dr. Scaife did not act within the scope of his employment for their state law claims. Given that the scope of employment inquiry for FTCA purposes is governed by state law, the Court will construe this as an argument that Plaintiffs' case is not subject to the FTCA, though Plaintiffs' brief does not explicitly state as much. *See id.* at 4-7.

is the same required for the purposes of deciding whether an action is subject to the FTCA and its exhaustion requirements. Accordingly, the Court will analyze the scope of employment both for the purposes of the Motion to Dismiss and as a subsequent challenge to the substitution.

*i. Scope of Employment*

The question of whether Dr. Scaife was acting within the scope of employment for purposes of the FTCA and the attendant certification is governed by West Virginia law. *See Doe v. Meron,* 929 F.3d 153, 165 (4th Cir. 2019) (citing *Gutierrez de Martinez,* 111 F.3d at 1156-57)). To determine whether a tort occurred within the scope of employment, West Virginia courts examine several factors, including the character of the employment, the nature and character of the tortious conduct, and the time, place, and purpose of the conduct*. Roof Serv. of Bridgeport, Inc. v. Trent*, 854 S.E.2d 302, 315 (W. Va. 2020) (citation omitted). West Virginia has specific provisions governing claims of medical professional liability under the MPLA. *See* W. Va. Code Ann. § 55-7B-1, *et seq.*; *State ex rel. PrimeCare Med. of West Virginia, Inc. v. Faircloth*, 835 S.E.2d 579, 586 (W. Va. 2019).

> "Medical professional liability" is defined in the MPLA as:
>
> any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

W. Va. Code Ann. § 55-7B-2(i). The MPLA goes on to define both health care and health care providers. *See id.* § 55-7B-2(e), (g). Health care is defined under the statute as:

> 1) Any act, service or treatment provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment;
> (2) Any act, service or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional for, to or on behalf

      of a patient during the patient's medical care, treatment or confinement, including, but not limited to, staffing, medical transport, custodial care or basic care, infection control, positioning, hydration, nutrition and similar patient services; and
      (3) The process employed by health care providers and health care facilities for the appointment, employment, contracting, credentialing, privileging and supervision of health care providers.

*Id*. § 55-7B-2(e). If Dr. Scaife was providing health care as defined by the MPLA, his case is one of "medical professional liability," which is undoubtedly within the scope of his employment as a medical professional and covered by the FTCA. However, Plaintiffs contend that the claims brought against Dr. Scaife are not ones of medical professional care liability because they do not involve "health care services." Pls.' Mem. in Supp. at 4-7.

      Firstly, Plaintiffs have not provided any evidence challenging the certification beyond their own pleadings, let alone the required "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision." *Gutierrez de Martinez*, 111 F.3d at 1155. But it is clear from the face of the Complaint that Plaintiffs take issue with Dr. Scaife's provision of medical or related functions within the scope of his employment.[3] The claims arise solely from Dr. Scaife's provision of medical care to Plaintiff Lindsey Totten as the "on-call" physician for Valley Health when she came into the hospital for labor and delivery. *See e.g.*, Compl. The conduct at issue ("the negligence" and "intentional infliction of emotional distress" originally pled as Counts I and III), amount to criticism of Dr. Scaife's clinical judgment, care

---

[3] The Court notes that Plaintiffs use their allegations in the Amended Complaint to support their contentions. The Motion to Amend has not yet been granted. ECF No. 20. However, for the purposes of this Order, the Court has reviewed the Amended Complaint. Many of the allegations of the Amended Complaint which Plaintiffs point to as supporting their argument are simply conclusory allegations and legal characterizations of conduct, rather than specific descriptions. The Court is not required to accept these conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). But even if the Court accepted these amended allegations, the particular facts asserted remain completely tied to medical treatment, whether labelled intentional or negligent, as discussed above.

rendered, or bedside manner during Plaintiff Lindsey Totten's delivery, as described by the Plaintiffs in their own words. For example, the Complaint alleges that Dr. Scaife "owed a duty to Plaintiffs to act professionally and compose himself as a reasonable OB-GYN while birthing a baby." Compl. at Statement of Facts, ¶ 10. It alleges that Dr. Scaife used his bare hands to give Plaintiff an episiotomy and angrily advised Plaintiff Lindsey Totten that he was abandoning his duties without providing a qualified second Doctor to complete the birth. Compl. at Count I, ¶¶ 2-8. His abandonment of the birth, refusal to finish the delivery of T.T., and insinuation that he would fight Mr. Totten rather than return to the delivery room (the alleged assault) were part of his failure to complete a medical service, here, the delivery of T.T. *Id.* at ¶¶ 5-9.

These allegations involve Dr. Scaife's breach of the relevant standard of care – that he either exercised poor clinical judgment, provided inadequate care, or had a poor bedside manner – and inherently include "[a]ny act, service or treatment provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment." *See* W. Va. Code Ann. § 55-7B-2(e). Regardless of how the complaint is pled, the alleged conduct at issue involves medical care that is subject to the MPLA and is part of Dr. Scaife's scope of employment as a medical professional. As such, the FTCA is applicable, and Plaintiffs' admitted failure to comply with its provisions[4] requires dismissal of the claim.

*ii. Intentional Tort Claim*

In a last-ditch effort to save their Complaint, Plaintiffs cite to the intentional tort exception found in the FTCA. *See e.g.*, Mem. in Supp. The FTCA has an exception that preserves governmental immunity for "any claim arising out of assault…." 28 U.S.C. § 2680(h).

---

[4] The Court notes that the MPLA has its own pre-suit notice requirements that would be applicable to Plaintiffs' action if it were to proceed against Dr. Scaife individually. These requirements and failure to comply are explained further in the discussion of the merits of SMMC's Motion to Dismiss.

However, this waiver provision is inapplicable to "assault or battery arising out of negligence in the performance of medical, surgical, dental, or related functions." 42 U.S.C. 233(g). Plaintiffs do not argue that the assault or battery arose from medical negligence and instead, have repeatedly referred to the specific actions in this claim as ones of intentional conduct, and so this provision is not implicated. *See e.g.*, Mem. in Supp. of Rule 15 Motion to Amend Complaint, ECF No. 21.

The United States also notes that none of the original claims asserted against Dr. Scaife (negligence, intentional infliction of emotional distress, loss of consortium and loss of enjoyment of life, and punitive damages[5]) are listed in the statute and so are not exempted from coverage under the FTCA. *See* United States' Reply at 3-4, ECF No. 34. Of course, Plaintiffs have since moved to amend their Complaint to "clarif[y] that Plaintiffs are asserting a claim for assault based upon the conduct complained of and asserted in the original Complaint," and to otherwise clarify that Dr. Scaife's behavior was intentional. Mem. in Supp. of Rule 15 Motion to Amend Complaint at 3, ECF No. 21.

However, Plaintiffs have not changed any of the underlying factual allegations, and the Court's analysis is not swayed even where the existing allegations are now labelled as ones of "assault." Intentional torts can be governed by the MPLA where they are part of a health care service. *See Earle v. City of Huntington,* 2015 WL 5611650, at *3 (S.D.W. Va. Sept. 23, 2015). Regardless of how the claims have been pled, all of Plaintiffs' claims are based on alleged tortious conduct while providing health care to Plaintiff Lindsey Totten during labor and delivery

---

[5] The Court notes that loss of consortium is a derivative claim. *State ex rel. Small v. Clawges*, 745 S.E.2d 192, 201 (W. Va. 2013); *McLaurin v. Vulcan Threaded Products, Inc.*, 410 F. App'x 630, 633 n.3 (4th Cir. 2011). Punitive damages and loss of enjoyment are damages claims. *See Wilt v. Buracker,* Syl Pt. 4 in part, 443 S.E.2d 196 (W. Va. 1993). Accordingly, dismissal of the underlying claims requires dismissal of these claims as well.

of T.T. Here, the alleged assault arose from a disagreement over Dr. Scaife's abandonment of the delivery, which is undoubtedly an omission in the provision of medical care. Therefore, to the extent that there are any factual allegations that the Court must take as true, the alleged assault occurred in the course of providing (or failing to provide) medical care. All actions therefore occurred within the scope of the MPLA and during Dr. Scaife's employment, and the claim remains subject to the FTCA. Given that Plaintiffs have not effectively challenged certification and have admittedly failed to comply with the FTCA, this Court remains deprived of jurisdiction and the Complaint must be dismissed and the United States' Motion to Dismiss must be **GRANTED.**

### B. SMMC's Motion to Dismiss

The Court has thus far dismissed all of Plaintiffs' FTCA claims against the United States. The only remaining claims are for state law actions against SMMC, because SMMC is not a deemed health care provider covered by the FTCA. However, this Court retains supplemental jurisdiction to resolve the state law claims. *See* 28 U.S.C. § 1367.

West Virginia's MPLA is applicable to the claims against SMMC as a health care provider. *See* W. Va. Code Ann. § 55-7B-2(g). Pursuant to the MPLA, a medical professional liability action ordinarily may not be filed against "any health care provider" unless a plaintiff first timely and properly serves the health care provider with a screening certificate of merit. W. Va. Code § 55-7B-6(a), (b).[6] A failure to provide the required notices under the MPLA deprives

---

[6] There is an exception for claimants and/or their counsel who believe that no screening certificate of merit is necessary because the cause of action is "based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." W. Va. Code Ann. § 55-7B-6(c). This has not been invoked by Plaintiffs and is not applicable here.

a court of subject matter jurisdiction. *See Syl. Pt. 2, State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 835 S.E.2d 579 (W. Va. 2019) ("The pre-suit notice requirements contained in the [MPLA] are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction."). In this case, SMMC asserts that Plaintiffs' counts of negligence/breach of fiduciary duty (and subsequent loss of consortium and loss of enjoyment claims) are encompassed within the rendering of health care under the MPLA and Plaintiffs' failure to comply with pre-suit requirements deprives this Court of jurisdiction. *See* Def. SMMC's Mem. in Support of Mot. to Dismiss at 3-5, ECF No. 9.

Plaintiffs concede that they did not comply with the pre-suit requirements of the MPLA but argue that their claims do not arise under the MPLA. *See* Pls.' Mem in Supp. at 4-7, ECF No. 23. Instead, they argue that the core allegations do not involve a "medical professional liability action" because the claims do not involve health care. They rely on *Manor Care*[7] to support their claims that the negligence alleged here is outside the scope of health care services. *Manor Care, Inc. v. Douglas*, 763 S.E.2d 73 (W. Va. 2014). In *Scott*, the Supreme Court of Appeals of West Virginia extensively discussed the changes to the definitions in the MPLA and how it broadened protection from liability:

> Prior to the 2015 amendments, the MPLA defined "health care" as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment or confinement." W. Va. Code § 55-7B-2(e) (eff. 2006). This was the definition in effect when this Court issued the *Manor Care* decision in 2014. However, in 2015, the Legislature expanded the definition of "health care" to include "[a]ny act, service or treatment provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment." W. Va. Code § 55-7B-2(e)(1) (eff. 2015). The 2015 amendments also expanded the definition of "medical

---

[7] Plaintiffs' counsel does not cite the case beyond calling it "Manor Care," so the Court is presuming this is the case referenced, which it also notes was superseded by statute as discussed in *State ex rel. West Virginia University Hospitals, Inc. v. Scott*, 2021 WL 5446109 (W. Va. Nov. 22, 2021).

> professional liability." The prior definition of "medical professional liability" was "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i) (eff. 2006). The 2015 amendment added the following sentence to the definition of "medical professional liability": "It also means other claims that may be *contemporaneous to or related to* the alleged tort or breach of contract or otherwise provided, *all in the context of rendering health care services.*" W. Va. Code § 55-7B-2(i) (eff. 2015) (emphasis added). This addition to "medical professional liability" combined with the broadened definition of "health care," expanded what services, and therefore what claims, are included in the definition of "medical professional liability." All of these changes illustrate the Legislature's intent for the MPLA to broadly apply to services encompassing patient care—not just the care itself.

*State ex rel. West Virginia University Hospitals, Inc. v. Scott,* 2021 WL 5446109, at *6 (W. Va. Nov. 22, 2021).

Thus, the definition of health care broadly includes any act "during the patient's medical care, treatment, or confinement…" and any related claims. W. Va. Code Ann. § 55-7B-2(e). It also covers "[t]he process employed by health care providers and health care facilities for the appointment, employment, contracting, credentialing, privileging, and supervision of health care providers." *Id.* In *Scott*, the Court went on to find that the MPLA was applicable to corporate negligence claims regarding a decision to forgo installation of industry-recommended air filters on all its pediatric PIV systems because "they relate[d] to acts performed by health care providers, or persons supervised by health care providers or licensed professionals, regarding staffing." *Scott,* 2021 WL 5446109, at *7 (citing W. Va. Code § 55-7B-2(e)(2)). Here, Plaintiffs' claim that a 'special relationship' existed between Plaintiffs and SMMC which imposed a fiduciary duty of care on SMMC to protect them from the intentional tortious acts of Dr. Scaife is even more clearly within the confines of providing health care. As discussed above, all the allegations against Dr. Scaife involve actions surrounding health care decisions and a failure to conduct himself as a reasonable OB-GYN. It is from these very actions that SMMC allegedly failed to protect Plaintiffs.

Plaintiffs "cannot avoid the MPLA with creative pleading." *Scott*, 2021 WL 5446109, at *7. Because the complaint contains a cause of action that meets the definition of health care under West Virginia law, claims "related to" or "contemporaneous to" the injury asserted are encompassed in "medical professional liability." *See id.* Because the claims regarding SMMC's negligence (and subsequent harms) are based on health care provided to the Plaintiffs, as discussed above, the MPLA is applicable. Further, "[t]he pre-suit notice requirements contained in the [MPLA] are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction." *Faircloth*, Syl Pt. 2, 835 S.E.2d 579. Thus, failure to comply with the MPLA is fatal to Plaintiffs' claims against SMMC at this time, because it deprives both a state court and this Court of jurisdiction.[8]

### IV. CONCLUSION

For the foregoing reasons, the Motions to Substitute (ECF No. 3) and to Dismiss (ECF Nos. 6 and 8) are **GRANTED**. Plaintiffs' Motion to Amend (ECF No. 20) and Request for Remand (ECF No. 24) are therefore **DENIED AS MOOT.** The Court accordingly **DISMISSES** the Complaint in its entirety and **REMOVES** this matter from the docket of the Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: January 24, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[8] To the extent that Plaintiffs contend that, should Court find that the MPLA is applicable, it should allow them to meet the MPLA's pre-suit notice requirement rather than dismiss the case, this contention is completely unfounded given that the requirements are jurisdictional.